AYN RAND, Respondent, *v.* HEARST CORPORATION, Appellant.

First Department, March 18, 1969.

*Alfred H. Wasserstrom* of counsel (*Sherman H. Saiger* with him on the brief; *Lipton, Brennan & Wasserstrom,* attorneys), for appellant.

*Henry Mark Holzer* of counsel (*Erika Holzer* with him on the brief), for respondent.

*Weil, Gotshal & Manges* (*Horace S. Manges, Edward C. Wallace* and *Marshall C. Berger* on the brief) of counsel for American Book Publishers Council, Inc., *amicus curiæ.*

RABIN, J. Once again we are called upon to determine whether the right of privacy of a public figure has been invaded to a point where it can be said that sections 50 and 51 of the Civil Rights Law have been violated.

At what point may a public figure use the shield of privacy to protect against the use of his or her name—particularly when used in a manner that could be said to be of public interest? Specifically, may this plaintiff, who in her complaint says that her " name is well-known in the contemporary intellectual and literary world, [and] among the public at large generally she possesses great fame as a writer ", rightfully complain when

her style of writing is compared with that of the author of a book published, albeit such comparison appears on the cover of that book? Is such use of her name "selfish, commercial exploitation of [her] personality" as the Court of Appeals in *Gautier* v. *Pro-Football*, (304 N. Y. 354, 358) held must be established in order to afford protection to a public figure, and before it may be held to constitute use for advertising purposes within the meaning of sections 50 and 51 of the Civil Rights Law? Must every mention of the name of a prominent public figure — even though it be mentioned in an advertisement — be deemed to be an invasion of the right of privacy? These are some of the questions we reach, and to which we must find answer in this case.

As to the protection of the right of privacy of a public figure, the Court of Appeals in the case of *Estate of Hemingway* v. *Random House* (23 N Y 2d 341, 352) had this to say: "The fourth count — in which only Hemingway's widow asserts a cause of action — is grounded on the claim that the Hotchner book intrudes upon her privacy in violation of section 51 of the Civil Rights Law. The decisions in *Time, Inc.* v. *Hill* (385 U. S. 374, *supra*) and *Spahn* v. *Julian Messner, Inc.* (21 N Y 2d 124) dispose of the point and confirm the correctness of the dismissal of this cause of action. Both of those cases establish that, in the light of constitutional guarantees of free speech, section 51 may not be applied to afford recovery to a public figure or in matters of public interest — to quote from *Hill* (385 U. S., at p. 388) — ' in the absence of proof that the defendant published the [item] with knowledge of its falsity or in reckless disregard of the truth.' (See, also, *Spahn*, 21 N Y 2d, at p. 127.) "

And, if the case of *Booth* v. *Curtis Pub. Co.* (15 A D 2d 343, affd. 11 N Y 2d 907) stands for anything, it stands for, and establishes the proposition that not in every case where a name or picture of a public figure is used without consent — even in an advertisement — may we say that the Civil Rights Law has been violated. That must be, and is conceded.

In the light of the above principles we consider the case under review. There is no dispute as to the relevant facts involved in this action. Defendant is the publisher and distributor of a paperback book entitled "Chaos Below Heaven" by Eugene Vale. On the cover of the book the plaintiff's name is mentioned in the following manner: "Ayn Rand Enjoys * * * The Same Kind Of Mystique Analysis As Vale * * * Their Underlying Drive Is The Same." Such quotation is a true and accurate excerpt from a review of the subject book which was published in the newspaper, the *San Francisco Examiner*.

The plaintiff here alleges in her complaint that she is "well-known in the contemporary intellectual and literary world [and] among the public at large generally she possesses great fame as a writer".

The complaint also alleges that plaintiff did not consent to the use of her name but that the defendant used it for advertising purposes and for the purpose of trade. The plaintiff, therefore, concludes that the defendant has violated sections 50 and 51 of the New York Civil Rights Law.

In answer to the complaint the defendant has interposed various affirmative defenses, as well as two partial affirmative defenses. Briefly summarized they are as follows: That the complaint fails to state a cause of action; that the matter complained of was informative or educational in nature, and that the plaintiff, as a well-known author was related to the material; that the matter complained of was a fair and truthful report of a subject of public interest in a field in which the plaintiff was a public figure; that the complained of matter was merely quoted material taken from a published newspaper review, and that defendant in so quoting, repeated the reviewer's use of plaintiff's name in the context of literary comparison, thereby merely republishing and reporting fairly and accurately on a matter of public interest; that the use of this material was in conformity with the general custom in the book-publishing field and that the use was in good faith and without malice.

Upon motion of the plaintiff, Special Term ordered all of the affirmative defenses stricken, granting leave to replead only such defenses as might be in mitigation of damages. That motion searches the record and puts in issue the legal sufficiency of the complaint itself. (*Smith* v. *Helbraun*, 21 A D 2d 830.) Therefore, if the complaint fails to state a cause of action it may, upon this motion, be dismissed, although no cross motion to dismiss has been made.

The history and purpose of sections 50 and 51 of the Civil Rights Law have been the subject of much discussion. (See, e.g., *Spahn* v. *Julian Messner, Inc.*, 23 A D 2d 216, affd. 18 N Y 2d 324, vacated and remanded 387 U. S. 239, affd. on rearg. 21 N Y 2d 124.) It is sufficient for our purposes to say that the sections in the law were designed to protect an individual against "selfish, commercial exploitation". (*Gautier* v. *Pro-Football, supra.*)

The law — narrowly written — attempts to do so by proscribing the use of the person's name or picture for the purpose of trade or advertising. However, it has already been clearly established that not in every instance where a person's picture

or name is used in connection with advertising will a violation of the statute be found. (See *Booth* v. *Curtis Pub. Co., supra.*) The *Booth* case presented a situation where a person's photograph was used for advertising purposes and yet it was held that plaintiff had no cause of action.

Thus, in construing the law, the courts have looked to its underlying purpose — the need it was intended to fill — and rather than adhering to its exact letter have interpreted the spirit in which it was written. The words "advertising purposes" and for the "purposes of trade" were used as the means to carry out the law's fundamental purpose — the protection of an individual's right of privacy. They must be construed narrowly and not used to curtail the right of free speech, or free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed. Its underlying purpose being to protect privacy, in the case of a public figure — who by the very nature of being a public figure has no complete privacy — no liability exists when his or her name or picture is used without consent, or when the article complained of is of public interest, unless, of course, the publication is knowingly false (*Estate of Hemingway* v. *Random House,* 23 N Y 2d 341), or may be considered a blatant "selfish, commercial exploitation" of the individual's personality. (*Gautier* v. *Pro-Football, supra.*) As stated by the Court of Appeals in *Spahn,* and quoted with approval by the United States Supreme Court in *Time, Inc.* v. *Hill* (385 U. S. 374, 382) "ever mindful that the written word or picture is involved, courts have engrafted exceptions and restrictions onto the statute to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest." (18 N Y 2d 324, 328. See, e.g., *Gautier* v. *Pro-Football, supra*; *Koussevitzky* v. *Allen, Towne & Heath,* 188 Misc. 479, affd. 272 App. Div. 759; *Sidis* v. *F-R Pub. Corp.,* 113 F. 2d 806, cert. den. 311 U. S. 711.)

It is quite apparent, therefore, that books and publications have a special position in the law. My distinguished colleague in dissenting puts it very aptly when he states that "concededly book publishing, though a business, stands on a somewhat different plane than many other businesses in that freedom of the press is often involved." Therefore, in considering books and publications, courts must take a broad view of what may or may not be written and what may or may not be said about books and their authors.

The right to publish factual matter of interest to the public was recently considered in the case of *Time, Inc.* v. *Hill* (*supra*), where the United States Supreme Court held that there was no action under the New York privacy statute in the absence of proof that the matter was published with knowledge of its falsity, or with a reckless disregard of the truth. Hence, the courts have been careful to interpret the right of privacy statutes in such manner as would permit the free flow of information. "Either or both of two factors may be involved in justifying breach of the seal of privacy: the propriety of public information as newsworthy, in the light of the habits, customs and values of our society and the extent to which the plaintiff, either by his voluntary conduct or because it was thrust upon him, has achieved the position of a ' public figure ' and thus became newsworthy." (1 Harper and James, Torts, § 9.7, pp. 686–687 [1956].)

Consequently, it is not sufficient to show merely, as plaintiff does here, that the acts complained of come within the four corners of the words used in the statute.

That the plaintiff is a public figure needs no discussion. Her complaint rests on that fact. Being a public figure in the literary world, the right to discuss her work, to comment on it, to criticize and compare, is thrown into public domain. Plaintiff cannot, and does not assert that the original review of the Vale book in the *San Francisco Examiner* which review compared the style of the subject book to that of Ayn Rand, was improper and a violation of the statute. We cannot see how using a true excerpt of that review in comparing the work of the plaintiff with the book involved (even though it be on the cover of the book), violates the right of privacy of this public figure. Undoubtedly, the publisher had a right to inform the public of the nature of the book being sold. If, incidentally, in so doing it compared the work of the author with that of the plaintiff — an author of public renown whose work is properly subject to comment — it does not bring such comment within the proscription of the statute. The comparison, without question, is of public interest, and if that be a method of best informing the public of the nature and style of the book published, there can be no valid objection to it.

Nor do we think it is of any significance that the work being described is one of fiction. Here, we are not considering the protection of the book itself. The book itself does not in any way violate plaintiff's rights. Our only concern is with the use of the quotation from the book review. Would it be any different if this book were a biography (and hence, factual)

and on the cover there were a comparison to the style of writing of another known biographer? We think not.

In urging that the situation in this case is violative of sections 50 and 51 of the Civil Rights Law the plaintiff asserts that the type of use here is not similar to that of *Booth* v. *Curtis Pub. Co.* (*supra*) which is illustrative of a case falling without the ambit of the statute. Of course, it is not similar. The facts in the *Booth* case and in our case are entirely different. They present different situations and call for different considerations. This case does, however, come within the overriding principle implicit in the *Booth* decision, which is that the courts do not find a violation of sections 50 and 51 of the Civil Rights Law, merely because a name or photograph of a person is used without consent in an advertisement. But, it would seem that the case under review is even further removed from a possible violation of these sections, because it involves a publication and comment on an author's style of writing, both of which the courts would be desirous to protect. It could properly be said to come within the ambit of those cases involving freedom of speech and of the press.

The plaintiff rests heavily on *Flores* v. *Mosler Safe Co.* (7 N Y 2d 276) in support of her claim. In that case a cause of action was found against the defendant who had utilized a previous news article published in a newspaper for its own commercial purpose in advertising in an attempt to sell its products.

Judge BREITEL, in the *Booth* case, points out why the Court of Appeals found a violation in the *Flores* case, stating (15 A D 2d 343, 348): "first, that the reproduced item was no longer current or newsworthy; and, second, that the reproduced matter was related in the commercial advertising to defendant's product, although never so related in the public medium in which the reproduced matter had first appeared." Those considerations are not present here. It cannot be said that the reproduced matter was no longer newsworthy. In conjunction with the book itself, a comparison to another author is, of necessity, always newsworthy and of interest to the public, which must consider whether or not to purchase the book. And, the original review — as did the excerpt therefrom — did relate the style of writing of Ayn Rand to that of the publisher's book. Consequently, the distinction between this case and the *Flores* case is clear. We might add that the *Flores* case presents a clear example of where a person's name was used for "commercial exploitation." That cannot be said here.

Just a note with respect to the pleadings. We agree with the conclusion of the dissenting opinion that the affirmative defenses here are really arguments in support of the contention that the complaint does not state a cause of action and perhaps should not have been pleaded as affirmative defenses. However, they effectively point to the insufficiency of the complaint as a matter of law.

In conclusion, we find that the defendant had a right to quote from the prior review, inasmuch as the information contained therein was a matter of public interest and was informative. Bringing attention to a review concerning a book offered for sale is a matter of great public interest. Consequently, we hold that the book publisher had a right to use the book review in the manner it did. To hold otherwise would constitute an impermissible restriction on what we deem to be the right of a publisher in informing the public of the nature of his book and comparing it with the works of other authors.

Accordingly, the order appealed from should be reversed, on the law, with costs and disbursements, and the complaint dismissed.

STEUER, J. (dissenting). Defendant published a book by Eugene Vale. Prior to the publication of the edition in question the book had been reviewed in the *San Francisco Examiner*. In the course of the review the reviewer compared the underlying style of the author with that of the plaintiff, a well-known writer, finding them in some respects similar. On the cover of the edition in question defendant printed an excerpt from this review in which the plaintiff's name was mentioned. While the matter is an excerpt rather than a full quotation, there is no question but that it states the reviewer's opinion accurately and gives the source of the quotation.

Plaintiff has brought suit under sections 50 and 51 of the Civil Rights Law. Defendant pleaded five separate complete defenses and one partial defense. Plaintiff moved to dismiss those defenses. The defendant, in resisting this application, argued first that a demurrer searches the record and that such a search would reveal that the complaint fails to state a cause of action. The validity of the defenses was also asserted. Special Term upheld the complaint and dismissed the defenses.

Section 51 gives any person whose name or portrait is used for advertising or purposes of trade without his written consent a cause of action for an injunction and for such damages as he may have sustained from the use and for exemplary damages. The act contains certain exceptions not pertinent

here. There can be no doubt that all the elements stated by the statute as requisite for relief are alleged. The plaintiff's name was used and it was without her consent. There can be little question that the use was for advertising or purposes of trade. Attention of a prospective buyer was called to the fact that a book reviewer considered the author's style similar to the plaintiff's, with the incontestable implication that one who had found plaintiff's style appealing would obtain similar satisfaction from the book on sale. If this is not advertising, it would be hard to give a satisfactory definition of what is.

I do not understand that any of the above is a matter of dispute. The argument is that the interpretation of the statute has circumscribed its effect so that not every breach of its literal wording gives rise to a cause of action. And no one can conscientiously maintain the contrary. However, the exception relied on does not extend to the facts of this case. Nor, in my opinion, does it indicate that a parity of reasoning mandates, or even warrants, an extension to include them. The exception may be styled that of incidental use by news media. Where a newsreel rightfully contains the photograph of a person, published with or without his consent, an exhibitor of that newsreel may exhibit that photograph in connection with the showing of the newsreel (*Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467). A magazine which has rightfully published the picture of a person may publish or cause to be published in other media a reproduction of that picture, not only to advertise the article to which the picture was related but the magazine itself (*Booth* v. *Curtis Pub. Co.*, 15 A D 2d 343). This is the incidental use explained in *Booth* (*supra*, p. 347). It should be, though apparently it is not, obvious that here we have no incidental use. Defendant's employment of plaintiff's name is not to advertise the medium which originally included plaintiff's name. It is not incidental to *that* publication. And the fact that the original publication was a legitimate use of the plaintiff's name cannot affect the situation. It is conclusively established that the use of a person's name for advertising or purposes of trade is not justified merely because the means employed is a quotation from a permitted use of that name (*Flores* v. *Mosler Safe Co.*, 7 N Y 2d 276).

Concededly book publishing, though a business, stands on a somewhat different plane than many other businesses in that freedom of the press is often involved. On occasion what might, in connection with other trades, constitute actionable conduct under the Civil Rights Law must be made to yield to con-

siderations of freedom of the press. And exemption on this ground extends to advertising as well as content (see *Spahn* v. *Messner, Inc.*, 23 A D 2d 216, 221; BREITEL, J.). This is not to say that every use by a publisher is to be so considered. The test is the nature of the material advertised — whether factual, that is historical, news, or the like, or not. No privilege to use the name or portrait of a person without consent applies to a work of fiction. "If the publication, however, by intention, purport, or format, is neither factual nor historical, the statute applies, and if the subject is a living person his written consent must be obtained." (*Spahn* v. *Messner, Inc., supra,* p. 222.) A fortiori, where the content is not exempted the advertising is not.

A rather ingenious, though patently fallacious, point has been inferentially raised — that though the content of the book that is being advertised is not informative, the advertising complained of is. It informs the prospective purchaser of the kind of literary style he may expect. All advertising shares this status.

In short, the publication which irrefutably contravenes the statute comes neither within any expressed limitation to its extent nor within any that might by logical extension be made to apply. Nor do constitutional considerations. invoke any exception. And it is well to note that we have held that such extensions should not be facilely extended by judicial process, such action being the province of the Legislature (*Spahn, supra,* p. 221). One visceral appeal frequently presented in cases of this character is that the plaintiff could scarcely survive in her profession without the benefits of publicity and should not be heard to complain. The argument has validity on the issue of damages, but not otherwise.

The majority, quite obviously and properly, does not find it necessary to consider the affirmative defenses. In the view I take, their merit or lack of it must be considered. The first defense is that hardy anachronism that the complaint does not state a cause of action. No discussion is required. The second, third and fourth defenses are in reality arguments, discussed above, explaining why the complaint does not state a cause of action. For the same reasons that they do not prevail to bring about a dismissal, they are unavailing as defenses. The fifth defense is also the first partial defense. It pleads a custom in the trade to publish critiques of the book advertised and, if such a review refers to an author other than the writer of the book being advertised, to publish his name. It is elementary that a custom cannot justify what

a statute forbids. However, following a custom may be a good reason to relieve against punitive damages. The second partial defense pleads a publication without malice. This also may serve in the same connection.

The order should be modified to allow the fifth defense to stand as a partial defense and to reinstate the second partial defense, and, as so modified, affirmed.

CAPOZZOLI, J. P., McGIVERN and NUNEZ, JJ., concur with RABIN, J.; STEUER, J., dissents in opinion.

Order entered on September 6, 1968, reversed, on the law, with $50 costs and disbursements to the appellant, and the complaint dismissed. The Clerk is directed to enter judgment in favor of the defendant dismissing the complaint, with costs.