*22 OPINION OF THE COURT
Emily Jane Goodman, J.
BACKGROUND AND FACTS
This case involves state-of-the-art electronic communication and public figures.
Howard Stern (Stern), a controversial radio talk show celebrity and heavily promoted public figure, announced his candidacy for the office of Governor of the State of New York in the spring of 1994. Defendant Delphi Internet Services Corporation (Delphi) provides access to paid subscribers to the vast electronic "information super highway”, known as the Internet. Stern brought this lawsuit because his photograph was used without his permission in an advertisement for the online bulletin board service Delphi had set up to debate Stern’s own political candidacy. There is no allegation that the defendant obtained the outlandish, bare buttock photo unlawfully or improperly. It is clear that plaintiff posed for the picture, but he does not object on grounds of its lewdness.
Delphi, as an on-line computer network, offers three types of information services to its subscribers: (1) "hard information”, such as news stories, stock quotes, or reference material; (2) computer games; (3) user interaction, meaning electronic mail, on-line conferences or bulletin board messages. Delphi has been operating for 11 years and currently has over 100,000 subscribers who pay "on-line time” for access.
Delphi set up on its on-line electronic bulletin board a subscriber participation debate on the merits of Stern’s candidacy. A June 1994 full page advertisement in New York Magazine and the New York Post featured the flamboyant photograph of Stern in leather pants which largely exposed his buttocks. The ad caption read "Should this man be the next governor of New York?” and continued: "You’ve heard him. You’ve seen him. You’ve been exposed to his Private Parts. Now he’s stumping to be governor. Maybe it’s time to tell the world exactly what you think. The Internet’s the one frontier even the King of (Almost) All Media hasn’t conquered. And Delphi’s where you get aboard. The online service that 'leads the way in Internet access.’ With Delphi, navigating the Net is as easy as falling down. Assistance is available *23 at every turn. From help files, guides and books, to hundreds of online experts, including Wald Howe, Delphi’s resident Internet guru and all around smart guy. So whether you think Howard-the-Aspiring-Governor should be crowned King of the Empire State, or just greased up and sent face-first down a water slide, don’t put a cork in it. Sit down, jack in, and be heard.”
In this action Stern alleges that defendant’s use of his name and photograph violates sections 50 and 51 of the New York Civil Rights Law. Stern does not deny that it is his picture and buttocks that appear in the advertisement, nor does Delphi.
Defendants have moved to dismiss the complaint, pursuant to CPLR 3211 (a) (7) (c).
DISCUSSION
Section 50 of the New York Civil Rights Law makes commercial misappropriation of a person’s name or likeness a misdemeanor. It provides in relevant part: "[a] person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person * * * is guilty of a misdemeanor.” (Civil Rights Law § 50.) Section 51 of the Civil Rights Law also authorizes a civil action for injunctive relief and damages against a party who violates section 50. (See, Civil Rights Law § 50; Cohen v Herbal Concepts, 63 NY2d 379, 383 [1984].) These provisions must be construed narrowly (Rand v Hearst Corp., 31 AD2d 406 [1st Dept 1969], affd 26 NY2d 806 [1970]), and constitute the only available relief in New York for the so-called "invasion of privacy” torts recognized at common law. (See, Howell v New York Post Co., 81 NY2d 115, 123 [1993]; Cohen v Herbal Concepts, 63 NY2d, at 383, supra.)
To state a claim under section 51, plaintiff must show that: (1) defendant used his name, portrait or picture, (2) for purposes of trade or advertising, (3) without his written consent. (Cohen v Herbal Concepts, 63 NY2d, at 383, supra.) It is undisputed that Delphi used Stern’s name and picture without his permission, and that both were used " 'for advertising purposes’ ” within the meaning of the statute since it "appeared] in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service.” *24 (Beverley v Choices Women’s Med. Ctr., 78 NY2d 745, 751 [1991].)
Defendant contends, however, that its use of Stern’s name and photograph falls within the scope of the "incidental use exception” to sections 50 and 51.*
The incidental use exception was first adopted in Humiston v Universal Film Mfg. Co. (189 App Div 467, 476 [1st Dept 1919]). The Court there held that a news disseminator was entitled to display the name and photograph of a woman who was the subject of the defendant’s newsreel for purposes of attracting and selling the film. The Court reasoned: "If it be held that they cannot be used under the statute for purposes of advertising these motion pictures, then it is clear that they cannot advertise the motion pictures at all, because they cannot be fully advertised, at least, without giving the name of the parties represented * * * [T]he use of the plaintiffs name or picture in the approach to the theater and upon the billboards in front as advertising what was to appear upon the screen is * * * incidental to the exhibition of the film itself.”
Here we are presented with the novel issues of whether Delphi’s electronic bulletin board service is to be treated as a news disseminator, whether the incidental use exception is applicable, and defendant’s entitlement to First Amendment protections.
Although only paid subscribers may access Delphi’s online information services from their computers or terminals, this service is analogous to that of a news vendor or bookstore, or a letters-to-the-editor column of a newspaper, which require purchase of their materials for the public to actually gain access to the information carried. As Judge Leisure of the United States District Court, Southern District of New York, has noted, "[a] computerized database is the functional equivalent of a more traditional news vendor, and the inconsistent application of a lower standard of liability to an electronic news distributor * * * than that which is applied to a public library, book store, or newsstand would impose an undue burden on the free flow of information.” (Cubby, Inc. v Compuserve, Inc., 776 F Supp 135, 140 [SD NY 1991].) In Cubby, Judge Leisure found that CompuServe, a computer service company that provides service similar to Delphi, was in es *25 sence "an electronic, for-profit library” (supra, at 140) which is afforded the same First Amendment protections as distributors of publications. Similarly, here it is evident that Delphi’s on-line service must be analogized to distributors such as news vendors, bookstores and libraries. (It is unnecessary to discuss Delphi’s function as a media news organization disseminating "hard news”.)
New York courts have consistently held that the incidental advertising exception applies to all "news disseminators,” not just newspapers and magazines. (See, Booth v Curtis Publ. Co., 15 AD2d 343 [1st Dept], affd 11 NY2d 907 [1962] [privileged or incidental advertising use by a news disseminator of a person’s name or identity does not violate Civil Rights Law § 51]; Velez v VV Publ. Corp., 135 AD2d 47, 50 [1st Dept], lv denied 72 NY2d 808 [1988] ["(T)he incidental use in an advertisement by a news disseminator of a person’s name or identity does not violate the statutory proscription, if it had previously published the item exhibited as a matter of public interest”; emphasis supplied].)
Plaintiff concedes that on-line computer services engage, on occasion, in activities similar to those of news vendors. Plaintiff also does not dispute that Delphi’s services include dissemination of news and that the service for which Stern’s likeness was exploited was a newsworthy service similar to a letters-to-the-editor column in a news publication.
Defendant concedes that if the advertisements at issue used plaintiff’s name and likeness to advertise products unrelated to news dissemination, plaintiff would have stated a claim for relief under Civil Rights Law § 51. However, since the advertisements were for a service related to news dissemination (in this case plaintiff’s very candidacy for public office), defendant argues they are protected by the incidental use exception. Thus it is defendant’s position that the use of the likeness determines the applicability of the exception, not whether a defendant is solely or even predominantly engaged in the dissemination of news.
The New York courts are consistently cautioned that the protections of Civil Rights Law §§ 50 and 51 shall be construed narrowly "so as not to apply to publications concerning newsworthy events or matters of public interest.” (Creel v Crown Publs., 115 AD2d 414, 415 [1st Dept 1985].) The First Amendment, of course, is construed broadly. (New York Times v Sullivan, 376 US 254 [1964].) It is well established that "the *26 constitutional guarantees of freedom of speech and of the press stand in the way of imposing” strict liability on distributors for the content of the reading materials they carry. (Smith v California, 361 US 147, 152-153 [1959].) In Smith, the Court struck down an ordinance that imposed liability on a bookseller for possession of obscene books, regardless of whether the bookseller had knowledge of the books’ contents. The Court reasoned that if First Amendment protections are not afforded to booksellers, "the bookseller’s burden would become the public’s burden, for by restricting him the public’s access to reading matter would be restricted.” (Supra, at 153.) Other courts have noted that "First Amendment guarantees have long been recognized as protecting distributors of publications * * * [o]bviously, the national distributor of hundreds of periodicals has no duty to monitor each issue of every periodical it distributes. Such a rule would be an impermissible burden on the First Amendment.” (Lerman v Flynt Dist. Co., 745 F2d 123, 139 [2d Cir 1984], cert denied 471 US 1054 [1985]; see also, Daniel v Dow Jones & Co., 137 Misc 2d 94, 102 [Civ Ct, NY County 1987] [computerized database service "is one of the modern, technologically interesting alternative ways the public may obtain up-to-the-minute news” and "is entitled to the same protection as more established means of news distribution”].) Affording protection to on-line computer services when they are engaged in traditional news dissemination, such as in this case, is the desirable and required result.
The proper analogy is to a television network. As a quantitive, though not qualitative assessment, there can be no question that a television network engages both in dissemination of news and entertainment, and that in the former situation " 'it should be entitled to the same privilege accorded other such media where the statutory right to privacy * * * is in issue.’ ” (Delan v CBS, Inc., 91 AD2d 255, 260 [2d Dept 1983].) Because Stern’s name was used by Delphi to elicit public debate on Stern’s candidacy, logically the subsequent use of Stern’s name and likeness in the advertisement is afforded the same protection as would be afforded a more traditional news disseminator engaged in the advertisement of a newsworthy product.
Plaintiff’s alternative argument that issues of fact remain as to whether Delphi is "a news disseminator” is not persuasive in the resolution of this motion for summary judgment. Plaintiff does not contest Delphi’s description of its services. Delphi does not claim that it is exclusively a news disseminator. Therefore, there is no need to develop a factual record.
*27 Plaintiff also argues that defendant is not entitled to the incidental advertising exception because Stern never approved the use of his photograph by Delphi and therefore Delphi was not merely reproducing a likeness that was previously published in conjunction with a permitted newsworthy dissemination as was the case in Humiston (supra), and Booth v Curtis Publ. Co. (15 AD2d 343, supra [photograph of plaintiff for advertisement/solicitation had previously appeared in defendant’s magazine]). However, Velez v VV Publ. Corp. (135 AD2d 47, supra) clearly rejects the position that an incidental use loses its protection because the subject did not give permission for the original use of his or her likeness. In Velez, activist Ramon Velez was the subject of a lengthy investigative report published in the Village Voice. The Voice subsequently used the title of the report and a picture of Velez to advertise for subscriptions although Velez had never given consent to the Voice for the use of his name or picture in the original story or in the subscription advertisements. The First Department held that the incidental use exception protected the Voice from liability so long as it was clear that Velez had not actually endorsed the Village Voice as a product. (Supra, at 52.) Similarly, here, Stern’s photograph is not part of the online bulletin board and Stern did not give permission for use of his likeness in the first instance. Still, under Velez, this does not render the use unlawful.
Other cases make clear that it is the purpose of the advertisement that determines whether it is protected, not whether the defendant had permission to use the likeness. The newsworthy use of a private person’s name or photograph does not give rise to a cause of action under Civil Rights Law § 51 as long as the use is reasonably related to a matter of public interest. For instance, in Creel v Crown Publs. (115 AD2d 414, supra), the Court held that a guide to nude beaches disseminated information concerning a matter in the public interest and, accordingly, the unauthorized use of plaintiffs photograph in the guide did not violate Civil Rights Law § 51. (See also, Delan v CBS, Inc., 91 AD2d 255, supra [photograph of plaintiff which appeared in a documentary film dealt with matters in the public interest and, accordingly, did not violate Civil Rights Law § 51].)
Most persuasive is the analysis of Judge Martin in Groden v Random House (1994 WL 455555 [SD NY 1994]). In Groden, the plaintiff objected to the use of his name and photograph to advertise a book about the assassination of President Ken *28 nedy. Although Groden’s photograph is not contained in the book, the book mentions him by name and directly discusses Groden’s work in the investigation of the assassination. The Court found that because there was no question that the purpose of the advertisement was to promote sales of the book, and that the advertisement itself described the main arguments advanced in the book, the use of Groden’s photograph, which concededly did not appear in the book, did not "transform a privileged use into an unlawful use because the goal of the Advertisement — to inform potential readers about the contents of the Book and induce them to purchase it— remains unchanged.” (Groden v Random House, supra, 1994 WL 455555, 3-4; see also, Arrington v New York Times Co., 55 NY2d 433 [1982] [noting that matters of public interest are to be broadly "defined”], cert denied 459 US 1146 [1983]; Davis v High Socy. Mag., 90 AD2d 374, 383 [2d Dept 1982] [holding that a well-known female posing partially nude is a newsworthy event within the context of sections 50-51].)
The controlling cases on the issue of the use of plaintiffs likeness for advertising purposes are Rand v Hearst Corp. (31 AD2d 406 [1st Dept 1969], affd 26 NY2d 806 [1970], supra) and Velez (supra). In Rand, author Ayn Rand alleged that the use of her name on the front cover of a book with which she had no connection was a violation of sections 50 and 51 of the Civil Rights Law. Ms. Rand’s name was used on the front cover in an excerpt from a review of the book in which the reviewer compared the book to Ms. Rand’s books. It was not disputed that the book publisher used Ms. Rand’s name for promotional purposes without her permission. As in this case, the material complained of also was initially published in the book review without Ms. Rand’s permission and was republished by the defendant publisher, also without her permission.
In rejecting Ms. Rand’s claim, the Appellate Division discussed the history and purpose of sections 50 and 51 of the Civil Rights Law and of the incidental use exception to the Civil Rights Law. The Court noted that "the sections in the law were designed to protect an individual against 'selfish, commercial exploitation’ ” and that in construing the law "the courts have looked to its underlying purpose — the need it was intended to fill — and rather than adhering to its exact letter have [been] interpreting] the spirit in which it was written.” (Supra, at 408-409.) The words "advertising purposes” and for the "purposes of trade” must be "construed narrowly and not used to curtail the right of free speech, or *29 free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed.” (Supra, at 409.) Since the underlying purpose of the statute is to protect privacy, no liability exists when the name or picture of a public figure (who has no complete privacy) is used unless the publication is knowingly false or may be considered a blatant " 'selfish, commercial exploitation’ of the individual’s personality.” (Supra, at 409.) The Court found that there could be no objection to the use of Ms. Rand’s name since the comparison between Ms. Rand’s work and the book at issue was "of public interest” and the quotation from the book review was "a method of best informing the public of the nature and style of the book published”. (Supra, at 410.)
Thus it is clear that what drives the "incidental use” exception is the First Amendment interest in protecting the ability of news disseminators to publicize, to make public, their own communications. (Groden v Random, House, supra; Velez v VV Publ. Corp., supra, 135 AD2d, at 49 [incidental use exception "is a necessary and logical extension of the clearly protected editorial use of the content of the publication”].) The Stern candidacy is, of course, well within the range of subjects which courts have deemed to be of public interest, namely electoral politics. (See also, Arrington v New York Times Co., 55 NY2d 433 [noting that subjects of public interest are to be "freely defined”], cert denied 459 US 1146 [1983]; Davis v High Socy. Mag., 90 AD2d, at 383, supra; Stephano v News Group Publ., 64 NY2d 174 [1984] [article on availability of bomber jacket is a "newsworthy event” for purposes of applying exceptions to section 50].) The fact that the advertisement in this case uses plaintiff’s name and photograph to indicate the subject on the computer bulletin board — namely, a debate of Stern’s candidacy — clearly brings it within the ambit of the incidental use exception. (See, Namath v Sports Illustrated, 48 AD2d 487 [1st Dept 1975], affd 39 NY2d 897 [1976] [use of plaintiff’s photograph for purposes of soliciting subscriptions is an incidental use where photograph gave reader indication of contents of magazine]; Rand v Hearst Corp., supra, 31 AD2d, at 412 ["We hold that the book publisher had a right to use the book review in the manner it did. To hold otherwise would constitute an impermissible restriction on what we deem to be the right of a publisher in informing the public of the nature of his book and comparing with the works of other authors”].)
*30 Delphi used Stern’s photograph to communicate to the public the nature and style of its service which in this case was the promotion of a news event in which plaintiff was a principal. To restrict Delphi from informing the public of the nature and subject of its service would constitute an impermissible restriction.
Stern’s privacy has not been invaded; Stern does not deny that he posed for the photograph in which he and his backside exposed in Dr. Denton style, leather pants are prominently featured and, of course, that he promoted himself as a candidate for Governor of this State. Thus no public purpose would be served by permitting Stern to silence Delphi; on the contrary. Indeed, it is ironic that Stern, a radio talk show host (as well as author and would-be politician), seeks to silence the electronic equivalent of a talk show, an on-line computer bulletin board service.
The Court in Rand (supra) pointed to two other relevant factors which render the incidental use exception applicable. First, the reproduced item was newsworthy and, second, advertised material was related to the product and to the use for which the reproduced material first appeared. (Supra, at 411.) Both factors are present here. In Rand, the dissent maintained the position urged upon the Court by plaintiff here. That is that the use of plaintiff’s name must be incidental to the use for which the reproduced material was originally generated. (Supra, at 413 [Stever, J., dissenting].) The majority rejected this view because the use of a person’s likeness is protected by the incidental use exception if the use is newsworthy and related to the matter’s original purpose. As the First Department has noted, the incidental use exception "is a necessary and logical extension of the clearly protected editorial use of the content of the publication”. (Velez v VV Publ. Corp., supra, 135 AD2d, at 49.) Delphi’s bulletin board, like a letter-to-the-editor column of a newspaper, is a protected First Amendment activity. Under Velez, the use of Stern’s likeness to advertise the content of the service is clearly protected. (See also, Groden v Random House, supra [advertisement to promote sales of book about Kennedy assassination which used unauthorized photograph to inform potential readers about contents of the book is protected].)
It is obvious and beyond question that the purpose of the advertisement was to promote sales of Delphi’s Internet service, and the Stern bulletin board in particular, and that the use of Stern’s photograph with the ad’s caption describes the *31 main point of the service. Had defendant merely used plaintiffs name in the advertisement, that use would clearly fall within the incidental use exception under the above-cited precedents. The fact that the advertisement also contained Stern’s photograph, which defendant concedes does not appear on-line on computer screens cannot transform a privileged use into an unlawful use when the goal of the advertisement — to inform potential subscribers about the contents of the on-line service and induce them to purchase it — remains unchanged.
Accordingly, it is hereby ordered that the motion for summary judgment is granted and the complaint is dismissed.

 The court need not reach the issue of the newsworthiness exception as the court finds that the incidental use exception applies.