Robert J. GRODEN, Plaintiff–Appellant,

v.

RANDOM HOUSE, INC., The New York Times Company, Inc., The New York Times Sales, Inc., and Gerald Posner, Defendants–Appellees.

No. 1678, Docket 94–9100.

United States Court of Appeals, Second Circuit.

Argued May 10, 1995.

Decided July 28, 1995.

Roger Bruce Feinman, New York City, for plaintiff-appellant.

Victor A. Kovner, New York City (Alexandra Nicholson, Lankenau Kovner & Kurtz, New York City; Lesley Oelsner, Associate Gen. Counsel, Random House, New York City; George Freeman, Kenneth A. Richieri, Asst. Gen. Counsel, The New York Times Co., New York City, on the brief), for defendants-appellees.

Before NEWMAN, Chief Judge, FEINBERG and PARKER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal pits a book publisher's right to advertise a book against Lanham Act and state-law privacy claims asserted by an author of another book whose name, picture, and quotation are displayed in the ad. The lawsuit arises in the emotionally charged context of the lingering controversy as to whether the assassination of President John F. Kennedy was the work of a lone gunman or the result of a conspiracy. Plaintiff-appellant Robert J. Groden appeals from the August 25, 1994, judgment of the District Court for the Southern District of New York (John S. Martin, Jr., Judge) and two subsequent rul-

ings that rejected his claims. Groden contends that an ad published by defendant-appellee Random House, Inc. promoting the book *Case Closed*, written by defendant-appellee Gerald Posner, violated Groden's federal and state law rights. For the reasons set forth below, we affirm both the judgment of the District Court and its post-trial rulings.

### Background

In 1993, in connection with the thirtieth anniversary of the assassination of President Kennedy, Random House published Posner's book *Case Closed*. The book attempts to refute the numerous conspiracy theories about the Kennedy assassination and concludes that the Warren Commission correctly determined that Lee Harvey Oswald acted alone in shooting the President. Groden is one of the authors whose theories *Case Closed* criticizes. In 1989, he co-authored with Harrison Edward Livingston the book *High Treason*. Though Groden objects to the label "conspiracy theorist," the indisputable fact is that the book he co-authored presents the theory that several people conspired to kill President Kennedy.

To announce the publication of *Case Closed*, Random House placed an advertisement—now the subject of this appeal—in *The New York Times* on August 24 and 27, 1993. The ad contained the names, photographs, and quotations of six authors, including Groden, whose books argue a conspiracy theory of the Kennedy assassination. Above the six pictures, the ad headline read, "GUILTY OF MISLEADING THE AMERICAN PUBLIC." Adjacent to Groden's name and photograph was a quotation dated 1989, which read as follows:

> Who killed President Kennedy? It took a combination of the CIA controlled Cuban exiles, Organized Crime, and the Ultra Right Wing, with the support of some politically well connected wealthy men to pull it off.

The quote was taken verbatim from the book *High Treason*, which Groden had co-authored. Below the set of six photographs and quotes, the ad contained a short statement of the thesis of *Case Closed:* "ONE MAN. ONE GUN. ONE INESCAPABLE CONCLUSION." and ended with: "READ: CASE CLOSED BY GERALD POSNER."

Groden's complaint alleged, with respect to both publications of the ad, violations of New York Civil Rights Law §§ 50 and 51 (McKinney 1992) and section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988 and Supp. V 1993). Appellees moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment on the basis of counsel's affirmation with supporting exhibits.

The District Court granted summary judgment and dismissed the complaint. The Court first held that appellees' advertisement fell within the "incidental use" exception to the New York Civil Rights Law and was therefore outside the scope of the statute. It also rejected the Lanham Act claims because appellant had failed to present facts supporting his claims of false advertising, false attribution, or false endorsement.

Apparently unbeknown to the District Court, three days before the Court issued its summary judgment ruling, Groden had filed an amended complaint, identical in all respects to the original except that it added a new defendant, the New York Times Sales Company, Inc., and a new substantive paragraph clarifying the Lanham Act claim. Appellant thereafter moved for reconsideration of the dismissal ruling and for recusal of the District Judge. Judge Martin denied rehearing and dismissed the amended complaint, concluding that nothing new had been alleged. The recusal motion was denied for lack of any factual basis. A second motion for recusal was also denied, and this Court denied Groden's attempt to compel recusal by a petition for mandamus.

### Discussion

#### I.  New York Civil Rights Law §§ 50 and 51

██ Since 1903, section 50 of the New York Civil Rights Law has made it a misdemeanor to use, for advertising purposes or for the purposes of trade, the name, portrait, or picture of any living person without first obtaining his written consent. N.Y.Civ. Rights Law § 50 (McKinney 1992); *see Humiston v. Universal Film Mfg. Co.*, 189 A.D.

467, 471–72, 178 N.Y.S. 752, 755–56 (1919). Section 51 provides a cause of action for injunctive relief and damages by any person whose name, portrait, or picture is so used. *See id.* § 51. In New York, there is no common-law right of privacy, *see Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140, 490 N.Y.S.2d 735, 739, 480 N.E.2d 349, 353 (1985), or publicity, *see Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 224, 474 N.E.2d 580, 584 (1984), and sections 50 and 51 afford the only available remedy. *See Freihofer*, 65 N.Y.2d at 140, 490 N.Y.S.2d at 739, 480 N.E.2d at 353; *Stephano*, 64 N.Y.2d at 183, 485 N.Y.S.2d at 224, 474 N.E.2d at 584.

■ Not every use of an individual's name, portrait, or picture for commercial purposes without his consent, however, violates sections 50 and 51. In general, the remedy of section 51 has been characterized as "limited" in scope. *See Freihofer*, 65 N.Y.2d at 140, 490 N.Y.S.2d at 739, 480 N.E.2d at 353. In the particular context of ads for books and periodicals, New York courts have recognized an exception to section 51 for the "incidental" use in ads or other promotional items of material that "prove[s] [the] worth and illustrates [the] content" of the works being advertised. *Booth v. Curtis Publishing Co.*, 15 A.D.2d 343, 349, 223 N.Y.S.2d 737, 743 (1st Dept.), *aff'd*, 11 N.Y.2d 907, 228 N.Y.S.2d 468, 182 N.E.2d 812 (1962); *see Velez v. VV Publishing Corp.*, 135 A.D.2d 47, 49, 524 N.Y.S.2d 186, 187 (1st Dept.), *app. denied*, 72 N.Y.2d 808, 533 N.Y.S.2d 57, 529 N.E.2d 425 (1988); *Namath v. Sports Illustrated*, 48 A.D.2d 487, 371 N.Y.S.2d 10 (1st Dept.1975), *aff'd*, 39 N.Y.2d 897, 386 N.Y.S.2d 397, 352 N.E.2d 584 (1976); *Humiston*, 189 A.D. at 477, 178 N.Y.S. at 758–59. The "incidental use" exception has been applied to the use of: a photo of a community activist, originally appearing on a newspaper front page, in a subscription-soliciting advertisement in a later edition of the paper, *see Velez*, 135 A.D.2d at 47, 524 N.Y.S.2d at 186; photographs of a sports personality, originally appearing in a sports magazine, in advertisements promoting the sale of subscriptions to the magazine, *see Namath*, 48 A.D.2d at 488, 371 N.Y.S.2d at 11; a photograph of a well-known actress, originally appearing in a magazine, as part of an advertisement for the magazine in other periodicals, *see Booth*, 15 A.D.2d at 344, 223 N.Y.S.2d at 738–39; and a person's name and picture, originally appearing in a newsreel film, on posters used to advertise the exhibition of the film, *see Humiston*, 189 A.D. at 476–77, 178 N.Y.S. at 759.

■ Groden acknowledges the "incidental use" exception to section 51, but contends for several reasons that it should not apply to Random House's ad for *Case Closed*. First, he argues that the "incidental use" exception is confined to the reproduction in advertising of an image, portrait, or likeness that has appeared within the publication being advertised. As Groden notes, the ad for *Case Closed* contains his photograph, but the book does not. Though most of the New York cases applying the incidental use exception involve the republication of a photograph originally used in an underlying publication, we do not believe that the New York courts require such republication. *Rand v. Hearst Corp.*, 31 A.D.2d 406, 298 N.Y.S.2d 405 (1st Dept.1969), *aff'd*, 26 N.Y.2d 806, 309 N.Y.S.2d 348, 257 N.E.2d 895 (1970), a leading case on incidental use, illustrates the point. *Rand* concerned a book jacket in which a publisher had used the name of Ayn Rand in describing the writing style of the book's author. The Appellate Division found this to be incidental use, even though Rand's name was not used anywhere in the book. The Court observed that "[t]o hold otherwise would constitute an impermissible restriction on what we deem to be the right of a publisher in informing the public of the nature of his book and comparing it with the works of other authors." *Id.* at 411, 298 N.Y.S.2d at 412. In the pending case, appellees used Groden's name and photograph, and the quote from his book, to contrast the theories publicly advanced by Groden with those discussed by Posner in *Case Closed*. And Posner's book specifically referred to Groden by name.

Other decisions of the New York courts also indicate that republication is not required for incidental use. In *Namath, supra*, as later explained in *Velez*, 135 A.D.2d at 51, 524 N.Y.S.2d at 189, the photographs of

Joe Namath reproduced in the advertisements were "cropped" versions of the original, lifted from their original context. In *Velez* itself, although plaintiff's picture was reproduced in a subsequent advertisement, it had been embellished by the addition of a cartoon balloon directed at plaintiff's face. *See id.* at 48, 524 N.Y.S.2d at 186. Despite the fact that they were not exact reproductions, these uses were ruled incidental.

■ Consistent with these cases, the District Court found that appellees' ad for *Case Closed* constituted an incidental use. The Court stated:

> Had defendants merely used plaintiff's name in the Advertisement, that use would clearly fall within the incidental use exception under the above-cited precedents. The fact that the Advertisement also contained Groden's photograph, which defendants concede does not appear in the Book, cannot transform a privileged use into an unlawful [one] because the goal of the Advertisement—to inform potential readers about the contents of the Book and induce them to purchase it—remains unchanged.

We agree.

Our conclusion is buttressed by the recent decisions of two courts finding the incidental use doctrine applicable in analogous cases. In *Lane v. Random House, Inc.*, No. 93–2564, 1995 WL 46376 (D.D.C. Jan. 26, 1995), the District Court for the District of Columbia found, on a challenge by Mark Lane, another of the conspiracy theorists depicted in the ad for Posner's book, that Random House could invoke the "incidental use" doctrine to defeat a common-law misappropriation claim. *Id.* at *6. In *Stern v. Delphi Internet Services Corp.*, 626 N.Y.S.2d 694 (Sup.Ct.1995), the Supreme Court, New York County, faced with a similar challenge, held that an on-line service's use of radio talk show host Howard Stern's photograph in connection with an advertisement for its Internet service was incidental. The service had used the photo to advertise an electronic bulletin-board debate on the merits of Stern's candidacy for Governor of New York. *See id.* at 697.

Groden further contends that even if the "incidental use" exception is applicable to the publication of a photograph not appearing in the original work, the exception is not applicable here, because his identity was appropriated in an objectionable manner. However, if New York places some limits on the incidental use exception because of the objectionable manner of portraying a subject, it does so sparingly, as the decision in *Velez* makes clear. The photo allowed in that case showed a "smiling Velez" next to the headline "How Ramon Velez Bleeds New York." 135 A.D.2d at 48, 53, 524 N.Y.S.2d at 186, 190. The ad for *Case Closed* essentially cites Groden as an author with whom Posner's book disagrees. Though the ad uses hyperbole in claiming that Groden and the other six conspiracy theorists are guilty of misleading the American public, that comment, in the context of a major controversy about a matter of high public interest, is not beyond whatever limits New York might place on the "incidental use" exception.

Groden's third challenge to the "incidental use" ruling contends that the ad for *Case Closed* does not represent the quality and content of Posner's book, or, at least, that issues of fact remain on this point. He points out that the book does not accuse him of "misleading the American public" and does not contain either the picture or the quotation of Groden reproduced in the ad. Nevertheless, we agree with the District Court that as a matter of law Groden's name, photograph, and quotation were all illustrative of the content of *Case Closed* and did not become less so because of the accompanying ad copy. As appellees document in their appellate brief, *Case Closed* contains numerous references to Groden's conspiracy theories and challenges both his research and his conclusions. The statement that Groden, among others, was "misleading the American public" accurately reflects the thesis of Posner's book.

■ Our conclusion that appellees' ad falls within the "incidental use" exception implements, and might even be required by, First Amendment considerations. As the New York courts themselves have recognized, "It is clear that what drives the 'incidental use' exception is the First Amendment interest in

protecting the ability of news disseminators to publicize, to make public, their own communications." *Stern,* 626 N.Y.S.2d at 700. Posner's book about the assassination of President Kennedy and the book Groden co-authored on that topic obviously concern a matter of significant public interest. *See Arrington v. New York Times Co.,* 55 N.Y.2d 433, 440, 449 N.Y.S.2d 941, 944, 434 N.E.2d 1319, 1322 (1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983). In construing New York's Civil Rights Law, "the courts have looked to its underlying purpose—the need it was intended to fill—and rather than adhering to its exact letter have interpreted the spirit in which it was written." *Rand,* 31 A.D.2d at 409, 298 N.Y.S.2d at 410. The underlying purpose of sections 50 and 51 was to protect privacy without preventing publication of matters of public interest. *See id.,* 298 N.Y.S.2d at 409. At least since *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), the New York courts have been vigilant in interpreting the right of privacy to permit the free flow of information. *See Rand,* 31 A.D.2d at 409, 298 N.Y.S.2d at 410. We see no reason to do otherwise in this case.

## II. The Lanham Act

Section 43(a) of the Lanham Act proscribes false designations of origin or false or misleading descriptions of fact in connection with any goods in commerce that are likely to cause confusion or that misrepresent the nature, characteristics, qualities, or geographic origin of the goods. *See* 15 U.S.C. § 1125(a) (1988 & Supp. V 1993); *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1548–49 (2d Cir.1991).

■ Groden contends that the ad for *Case Closed* violates the Lanham Act in essentially two respects. First, he claims that attributing to him the statement quoted from the book he co-authored, *High Treason,* constitutes a kind of "reverse palming off" prohibited by section 43(a) of the Lanham Act. *See, e.g., Rosenfeld v. W.B. Saunders,* 728

F.Supp. 236, 243 (S.D.N.Y.), *aff'd,* 923 F.2d 845 (2d Cir.1990). This claim is premised on the fanciful notion that the quote cannot be attributed to Groden because the quoted words were written by his co-author, Livingston. Judge Martin properly rejected the claim, noting that "plaintiff . . . having held himself out to the public as a co-author of the entire work, . . . cannot complain that statements taken from the book are attributed to him." [1] We need not consider how the attribution issue might be resolved with respect to co-authors who publicly represent that they have each written distinct portions of a work.

■ Appellant's second Lanham Act argument contends that the ad constitutes false advertising because the statement "GUILTY OF MISLEADING THE AMERICAN PUBLIC", made with reference to Groden and the other authors, and the statement, "ONE MAN. ONE GUN. ONE INESCAPABLE CONCLUSION.", made with reference to Posner's thesis, are both false. This claim also is without a basis in law. In order to be actionable under the Lanham Act, a challenged advertisement must be literally false or, though literally true, likely to mislead or confuse consumers. *See Johnson & Johnson \* Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992); *McNeil–P.C.C.,* 938 F.2d at 1549. However, statements of opinion are generally not the basis for Lanham Act liability. *See Restatement (Third) of Unfair Competition* § 3 cmt. d (1993).

■ As the District Court noted, the statement "GUILTY OF MISLEADING THE AMERICAN PUBLIC" is obviously a statement of opinion that could not reasonably be seen as stating or implying provable facts about Groden's work. *See Licata & Co., Inc. v. Goldberg,* 812 F.Supp. 403, 408 (S.D.N.Y.1993); *see also Lane v. Random House,* 1995 WL 46376 at *9 (finding same statement at issue here to be "rhetorical hyperbole" that "does not state actual facts about an individual" and "cannot be proven

---

**1.** Judge Martin relied not only on the co-authorship representation on the cover of the book itself but also on Groden's joint ownership with Livingston of the copyright in the book. On appeal, Groden disputes his co-ownership of the copyright, but that dispute need not be resolved in order to determine that the quote was properly attributed to Groden.

true or false"); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 n. 7 (1st Cir.) (in context of defamation case, statement that plaintiffs were " 'blatantly misleading the public' " was "subjective and imprecise, and therefore not capable of verification or refutation by means of objective proof"), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567 (1992).[2]

■ Moreover, the statements "GUILTY OF MISLEADING THE AMERICAN PUBLIC" and "ONE MAN. ONE GUN. ONE INESCAPABLE CONCLUSION." are not literally false with respect to the work being advertised, because they accurately describe the thesis of *Case Closed*. The Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services. *See* 15 U.S.C. § 1125(a)(1); *McNeil–P.C.C.*, 938 F.2d at 1548 n. 1. No matter what the true facts might be concerning the Kennedy assassination, the ad's statements said nothing false about Posner's book.

In this context, as the District Court noted, it is important to distinguish between advertising statements made to summarize an argument or opinion *within* a book and those made *about* a book as a product. The former are essentially a matter of argument, to be accepted or rejected by those who read the book, while the latter might often be statements of fact that might be verifiable. Only in the latter case will the statements possibly violate the Lanham Act. Clearly, we do not have such a statement here. To the extent that the ad's first statement conveyed a thought concerning *Groden's* book, the statement was, as noted, well within the bounds of tolerable opinion.

■ Although the District Court did not reach the argument, we also note—as we did in section I—that any attempt to apply the

Lanham Act to appellees' ad would raise substantial free speech issues. As the legislative history surrounding the 1989 amendments to section 43(a)(2) makes clear:

> [T]he proposed change in section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material.... The section is narrowly drafted to encompass only clearly false and misleading commercial speech.

135 Cong.Rec. H1217 (daily ed. April 13, 1989) (Statement of Rep. Kastenmeier).

In the context of expressive works, we have been careful not to permit overextension of the Lanham Act to intrude on First Amendment values. *See Rogers v. Grimaldi*, 875 F.2d 994, 1000 (2d Cir.1989) ("Where a title with at least some artistic relevance to the work is not explicitly misleading as to the content of the work, it is not false advertising under the Lanham Act."). With a subject of such manifest public interest as the Kennedy assassination, ample leeway must be accorded to statements that advertise books by expressing opinions, no matter how extravagantly worded, about the merits of opposing viewpoints.

III. The Issuance of Summary Judgment

■ Groden contends that the District Court erred by converting appellees' Rule 12(b)(6) motion *sua sponte* into a motion for summary judgment without giving adequate notice. A district court may not convert a motion under Fed.R.Civ.P. 12(b)(6) into a Rule 56 motion for summary judgment without sufficient notice to an opposing party and an opportunity for that party to respond. *See In re G. & A. Books, Inc.*, 770 F.2d 288, 294–95 (2d Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). "The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be convert-

---

**2.** In determining that appellees' ad does not state or imply provable facts, the District Court cited *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), in which the Supreme Court held that statements of opinion may sometimes give rise to a defamation claim if "sufficiently factual to be susceptible of being

proved true or false." *Id.* at 21, 110 S.Ct. at 2707. Appellant contends that a constitutional analysis under *Milkovich* has no place in this action brought pursuant to the Lanham Act. Because we conclude that appellees' statements do not violate the Lanham Act, we need not decide whether *Milkovich* has any application here.

ed into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Id.*

■ In this case, Groden had sufficient notice that appellees' motion might be converted and a sufficient opportunity to present any evidence relevant to the resolution of the action. Initially, it is doubtful that the District Court acted *sua sponte*, as Groden contends, since the motion before the Court explicitly sought summary judgment as an alternate form of relief to a Rule 12(b)(6) dismissal. In any event, Groden had ample opportunity to present evidence outside the pleadings, and in fact he did so, submitting affidavits, Warren Commission testimony, and technical data concerning the Kennedy assassination.

## IV. Disqualification

■ Groden further argues that the District Judge should have been disqualified. He bases this argument primarily on Judge Martin's statement in his August 22, 1994, opinion, that "[t]he proliferation of theories about the Kennedy assassination is proof that there is no universally accepted factual answer to the question, 'Who killed President Kennedy?'" Groden also objects to Judge Martin's comment that "the known evidence concerning the Kennedy assassination and the extensive debate over the Warren Commission's findings demonstrate that the actual facts will never be verifiable to everybody's satisfaction."

Far from demonstrating bias, these comments represent appropriate observations about the context in which this case arises. Groden's theory appears to be that Judge Martin should have recused himself either because he has an "extrajudicial bias" or because he developed a bias during the course of these proceedings. *See Liteky v. United States,* — U.S. —, —, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Neither doctrine, however, provides a basis for recusal here.

Groden has not shown that Judge Martin was influenced by a bias originating in some extrajudicial source. As the Supreme Court

in *Liteky* made clear, "[n]ot *all* unfavorable disposition towards an individual (or his case) is properly described by those terms." *Id.* at —, 114 S.Ct. at 1155 (emphasis in original). Bias or prejudice connotes an unfavorable opinion that is somehow "wrongful or inappropriate" because it is undeserved, rests on knowledge one ought not to possess, or is excessive. *Id.* Judge Martin's statements were neither wrongful nor inappropriate.

Nor do we believe that Judge Martin developed any predisposition during the course of Groden's hearings that would be sufficient to require his recusal. As the Supreme Court cautioned, "predispositions developed during the course of a trial will sometimes (*albeit rarely*) suffice." *Id.* at —, 114 S.Ct. at 1157 (emphasis added). However, to warrant disqualification, opinions formed by a district judge must display a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* There was no antagonism toward appellant evident here.

## V. Litigating the Kennedy Assassination

In his final contention, Groden appears to reveal his real interest in filing this lawsuit—an attempt to use a district court trial as a forum for ascertaining the facts concerning the Kennedy assassination. He contends that whether more than one person killed the President is "an issue of fact uniquely suited to a determination by a jury." Brief for Appellant at 47. Though Groden understandably would like to be a participant in such a trial, courts exist to adjudicate legally cognizable claims, not to resolve all public controversies that some might like to subject to courtroom processes.

## Conclusion

The judgment of the District Court and its post-trial rulings are affirmed.