Patricia **KIRKPATRICK**, d/b/a Wee Golf, a division of Anything's Possible, Plaintiff,

v.

THE **RAYS GROUP**, an unincorporated association that includes Rays Apparel, Inc. d/b/a Zeppelin, d/b/a Uh! Oh, d/b/a Bistro, d/b/a Jack and Spike, d/b/a Scusa, d/b/a Teenie Weenie Bambini, d/b/a Bondi Beach, d/b/a AM–FM, d/b/a Zeppi, d/b/a OP Ocean Pacific, and James Stark d/b/a Stark Concepts, Rays & Associates Ltd., and Rays Group, Defendants.

No. 98–CV–749A(F).

United States District Court, W.D. New York.

Oct. 13, 1999.

Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Daniel C. Oliverio, Leecia Roberta Eve, of Counsel, Buffalo, NY, for Plaintiff.

Kestenbaum, Dannenberg & Klein, LLP, Jeffrey C. Dannenberg, of Counsel, New York, NY, for Defendants.

**ORDER**

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B), on February 10, 1999. On September 17, 1999, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendants' motion to dismiss should be granted in part and denied in part.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motion to dismiss is granted in part and denied in part. The case is referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

**REPORT and RECOMMENDATION**

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned on February 10, 1999 by the Hon. Richard J. Arcara for report and recommendation on all dispositive motions. The matter is presently before the court on Defendants' motion to dismiss filed February 1, 1999 (Docket Item No. 5).

### *BACKGROUND*

Plaintiff, Patricia Kirkpatrick, d/b/a Wee Golf/Anything's Possible ("Plaintiff"), commenced this contract action on January 24, 1999 against Defendants The Rays Group,[1] James Stark, d/b/a Stark Con-

---

1. Plaintiff names The Rays Group as a defendant, asserting that The Rays Group is an unincorporated association that includes among its members Rays Apparel, Inc., which does business as Zeppelin, Uh!Oh, Bistro, Jack and Spike, Scusa, Teenie Weenie Bambi-

ni, Bondi Beach, AM–FM, Zeppi and OP Ocean Pacific, Complaint, ¶¶ 16, 22, 23, 25, 29, 31, 33, 35, 37, 39 and 41. Defendants explained in connection with its motion to dismiss that Rays Apparel, Inc., is the only true business entity among The Rays Group

cepts, Rays & Associates Ltd., and Rays Group. Plaintiff asserts five causes of action including violation of the Uniform Commercial Code, breach of contract, tortious interference with contractual relations, unjust enrichment and fraud.

On February 1, 1999 Defendants moved to dismiss the complaint as against all Defendants for improper venue, as against Defendants James Stark, Rays & Associates Ltd., and Rays Group for failure to state a claim, and as against Defendants Rays & Associates and Rays Group for lack of personal jurisdiction. In support of the motion, Defendants filed a Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (Docket Item No. 6) ("Defendants' Memorandum"), and the Affidavit of James Stark (attached to Docket Item No. 5) ("Stark Affidavit"). In opposition to the motion to dismiss, Plaintiff filed on March 19, 1999 a Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Docket Item No. 10) ("Plaintiff's Memorandum") and the Affidavit of Patricia Kirkpatrick (Docket Item No. 11) ("Kirkpatrick Affidavit"). In reply, Defendants filed, on April 6, 1999, a Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (Docket Item No. 13) ("Defendants' Reply") and the Reply Affidavit of James Stark in Further Support of Motion to Dismiss (Docket Item No. 14) ("Stark Reply Affidavit"). Oral argument was deemed unnecessary.

Based on the following, Defendants' motion to dismiss should be GRANTED in part and DENIED in part.

### FACTS [2]

Plaintiff Patricia Kirkpatrick, d/b/a Wee Golf, a division of Anything's Possible

("Wee Golf"), is President of Wee Golf. Wee Golf's place of business located at 5177 Homestead Place, Lewiston, New York. Peggy Beakes, Vice President of Wee Golf, works out of an office located at 870 Fawn Grove Road in Fawn Grove, Pennsylvania. Beakes prepares purchase orders for Wee Golf and sometimes receives shipments of ordered merchandise. Beakes is compensated by Plaintiff for such services, but has no investment or ownership interest in Wee Golf.

Plaintiff sells and distributes traditional golf apparel and accessories for children and juniors, wholesale, to golf pro shops and resorts throughout the United States and, on a retail basis through advertisements placed in print publications, as well as over the Internet. Plaintiff considers Wee Golf to be the leading supplier of children's golf wear and that it is the first company in the United States to offer a complete line of golf apparel and accessories for children ages 2 to 7.

Defendant Rays Apparel, Inc. ("Rays Apparel, Inc."), a California corporation in the business of manufacturing and selling apparel, maintains its principal office in Costa Mesa California and another office and showroom at 485 Seventh Street in the New York City "garment district." Defendant James Stark ("Stark"), both a shareholder and President of Rays Apparel, resides in Laguna Hills, California. Prior to creating Rays Apparel, Stark conducted business with his wife under the name "Stark Concepts." Stark's brother, Bill Starks, is Vice President of Sales for Rays Apparel. Lisa Dibsie is a sales representative for Rays Apparel, Inc. and works

and that the remaining alleged members of The Rays Group are either merely names under which Rays Apparel, Inc. conducts business, or registered trademarks owned by Rays Apparel, Inc. Affidavit of James Stark, attached to Notice of Motion filed February 1, 1999 (Docket Item No. 5), ¶¶ 2–3. As Plaintiff has submitted nothing contradicting Defendants' explanation, in the interest of factual accuracy, the court considers Rays Apparel,

Inc. to be the business entity with which Plaintiff directly conducted the business at the core of the instant dispute and The Rays Group to be another name for Rays Apparel, Inc.

2. The fact statement is taken from the pleadings and motion papers filed in this action.

out of its New York City office. Rays & Associates Ltd., ("Rays & Associates") is a business entity located in the Cayman Islands, and Rays Group ("Rays Group"), is a business entity located in Hong Kong.

Rays Apparel, Inc. manufactures children's and men's sportswear which it sells wholesale either under one of its own registered trademarks or on a "private label" basis. Rays Apparel's sales force is headquartered in its New York City office. Its merchandise is manufactured either in Southern California through Rays Apparel's own production division or is subcontracted to other companies located in the Far East.

Rays Apparel, Inc. included several lines of children's golf-related apparel, *i.e.,* shorts, polo shorts, sweaters and vests, among its clothing lines before Plaintiff sought to conduct business with it. Those clothing lines were sold by Rays Apparel, Inc. primarily under the brand name Uh! Oh, separated by colors and styles into various "collections" referred to as "Caddy Shack," "Tin Cup," "Milano," "Tuscany" and "St. Andrews."

Plaintiff first met Stark in the Fall of 1996 at Rays Apparel's booth at an industry trade show, International Kids Fashion Show, held at the Jacob Javits Center in New York City. At that time, Plaintiff informed Stark of her company's business and indicated her intention to expand into the "green grass" business which is understood in the apparel industry as referring to golf country clubs, pro shops and resorts. As there were no present plans for Rays Apparel, Inc. to expand into that market, Plaintiff was not considered a direct competitor and Stark agreed to consider selling to her. Plaintiff placed her first order with Rays Apparel, Inc. in February, 1997.

On October 24, 1997, Plaintiff ordered merchandise from Rays Apparel, Inc. ("Purchase Order No. WG11011") which she intended to sell as part of Wee Golf's summer 1998 collection.[3] Included in that order of children's golf apparel referred to by Rays Apparel, Inc. as the "Milano Collection," were 600 green knit vests which were to be manufactured and sold to Plaintiff without Rays Apparel, Inc. Uh!Oh labels or the crests which were usually embroidered on the left chest. It was Plaintiff's intention that the labels of her customers would be placed in the garments. The total amount of that order was $33,114. January 25, 1998 was the stated delivery date on the purchase order and February 25, 1998 was the stated cancel date. The goods were to be shipped to Beakes in Pennsylvania, although the bill for those goods was to be sent to Plaintiff in Lewiston, New York.

Shortly after placing the order, Plaintiff was informed of a shortage in the turquoise jacquard polo shirts which were among the items listed in Purchase Order No. WG11011. On November 3, 1997, Plaintiff agreed to the substitution of a different turquoise jacquard polo shirt for the ones originally ordered. Relying on the purchase order, Plaintiff accepted orders from customers and incurred expenses by attending trade shows where the Milano apparel line was promoted as well as by advertising the line.

On January 27, 1998, Plaintiff placed another order with Rays Apparel, Inc. ("Purchase Order No. WG8180"), which she intended to sell as part of her spring and summer collection. Included in that purchase order was children's golf apparel carried in Rays Apparel's St. Andrews and Tuscany collections. The total amount of that order was $85,929 and the stated "delivery window" was May 25 to June 25, 1998.

Plaintiff was informed on February 26, 1998, the day after the cancel date for Purchase Order No. WG11011, that there was a shortage in the turquoise jacquard polo shirts which had been substituted on November 3, 1998 for the original polo

---

**3.** A copy of Purchase Order No. WG11011 is attached to the Complaint as Exhibit A.

shirts Plaintiff ordered. Plaintiff then canceled the entire order for jacquard polo shirts.

On March 2,1998, Lisa Dibsie informed Plaintiff through a proposed revision to Purchase Order No. WG11011 sent to Peggy Beakes of another problem, specifically, that of the 330 solid periwinkle polo shirts ordered, only 36 were available for shipment. Dibsie requested Beakes respond as to whether Plaintiff would accept shipment of Purchase Order No. WG11011 as revised.

Thereafter, on March 4, 1998, Beakes sent Dibsie a revised Purchase Order No. WG11011 in which fewer quantities of the same goods contained in the original Purchase Order No. WG11011, except for the turquoise jacquard polo shirts which had been canceled, were ordered.[4] For example, only 66 of the original 600 green knit vests originally ordered and only 36 of the 330 periwinkle polo shirts originally ordered were requested. The total amount of goods orders per Purchase Order No. WG11011 as revised by Plaintiff was $10,130. According to Plaintiff, the reduction in the order was attributed to her need to "balance" the collection. Beakes also submitted an additional order for walnut linen and cotton shorts of the Milano collection, Purchase Order No. WG8197, which totaled $1,473.60.

Intending to expedite shipment of Purchase Orders Nos. WG11011 and WG8197, the Milano collection items, Plaintiff, in a letter to Dibsie, dated March 4, 1998, offered to send payment in the form of a check to cover both those orders. Plaintiff also requested confirmation as to when the Milano collection would be ready for shipment as well as whether any problems were anticipated with the St. Andrews and Tuscany collections, from which the items contained in Purchase Order No. WG8180 were ordered. In that letter, Dibsie was also advised that Plaintiff's ability to fill

customer orders depended on timely receipt of the goods ordered from Rays Apparel, Inc. and that Plaintiff had expended significant funds to promote the line.

Plaintiff maintains that Stark's brother, Bill Stark, called her on March 4, 1998 and attempted to persuade her to convince her customers to accept shipments for merchandise other than what Plaintiff had ordered from the Milano collection. On March 5, 1998, Bill Stark again telephone Plaintiff and advised her that although the solid polo shirts that matched the green vests Plaintiff had ordered were not available, Plaintiff should accept the original number of green vests, i.e., 600 as Plaintiff had originally, ordered as her customers "would figure out other ways to put an outfit together." Complaint, ¶ 111. According to Plaintiff, Bill Stark also stated that because the green vest had been "special ordered," as they were manufactured without the embroidered crest on the left chest, Plaintiff was required to take all of them. Plaintiff responded that as the stated delivery date for Purchase Order No. WG11011 had been missed and as delivery of the shirts that matched the green vests was not possible, she would not accept delivery of all 600 vests originally ordered.

Bill Stark next allegedly advised Plaintiff that if she failed to accept the merchandise, including the substitutions, none of the items in the Milano collection (Purchase Order No. WG11011) would be shipped. According to Plaintiff, Stark also threatened to refuse to ship the St. Andrews and Tuscany collections, i.e., Purchase Order No. WG8180.

On March 6, 1998, Bill Stark proposed substitutions that would "make the vests work," Complaint, ¶ 119, and told Plaintiff she was required to accept the order. Plaintiff refused to accept the substitutions. Bill Stark then stated that "probably" all of Plaintiff's orders, including

4. A copy of Plaintiff's revised Purchase Order No. WG11011 is attached as Exhibit I to the Complaint.

Purchase Order No. WG8180 for the St. Andrews and Tuscany collections, would be canceled. Following that conversation Plaintiff, in a letter dated March 6, 1998, informed Lisa Dibsie of the financial and credibility losses suffered by Plaintiff as a result of Rays Apparel's delay in shipping the Milano collection.

By letter to Lisa Dibsie dated March 9, 1998, Plaintiff reiterated her feelings of frustration as a result of the shortages encountered with regard to Purchase Order No. WG11011 and the ensuing conversations with Bill Stark. In the closing paragraph of that letter, Plaintiff stated

> I'm not really interested in another exhausting discussion. If Bill has rethought his position, I'll accept delivery of my revised order and nothing more. If I don't receive an invoice and confirmed delivery date from you by 5 PM, I'll assume *all* orders I have with you have been cancelled [sic] as Bill suggested.

Kirkpatrick Letter dated March 9, 1998 to Lisa Dibsie, attached as Exhibit M to Complaint (emphasis in original).

Lisa Dibsie responded to that letter with a further revised Purchase Order No. WG11011 which contained further substitutions in addition to those already proposed. Dibsie also repeated that Plaintiff was required to accept the special order 600 green knit vests. Plaintiff responded to that revised purchase order by re-faxing her March 9, 1998 letter in which Plaintiff indicated she was willing to accept only her revised purchase order of March 4, 1998 (related to Purchase Order No. WG11011).

On April 13, 1998, Plaintiff faxed to Rays Apparel, Inc. a request for a written confirmation that Purchase Order No. WG8180, covering the items from the St. Andrews and Tuscany collections, had been canceled in its entirety. In response, Dibsie faxed a statement to Beakes indicating that Purchase Order No. WG8180 had been canceled at Plaintiff's request. Plaintiff maintains that she never requested cancellation of Purchase Order No. WG8180 but, to the contrary, had previously informed Dibsie of her desire to receive the St. Andrews and Tuscany collections regardless of whether Rays Apparel, Inc. was able to deliver the Milano collection.

Plaintiff never received any merchandise ordered from the Milano, St. Andrews or Tuscany collections and maintains that as a result of such delivery failures, her customers ordered from competitors, causing Plaintiff to lose business and damaging her reputation. Plaintiff further maintains that the shortages resulted from Defendants' sale of merchandise that should have been used to fill Purchase Orders Nos. WG11011 and 8180 directly to Plaintiff's customers including the PGA Tour Shops, *i.e.*, The Paradise Shops, which were formerly Plaintiff's largest customer.

## *DISCUSSION*

### 1. *Improper Venue*

Defendants urge the court to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(3) on the basis that venue in the Western District of New York is improper. Defendant contends that none of the Defendants reside in this district, no substantial part of the event giving rise to the action occurred in this district, and no Defendant is subject to personal jurisdiction in this district when the action was commenced. Defendant's Memorandum at 7–9. However, as discussed below, the court finds that venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

As federal jurisdiction in this action is predicated upon diversity, venue is governed by 28 U.S.C. § 1391(a) which provides that venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property

that is the subject of the actions is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

When venue is challenged, it is plaintiff's burden to prove that venue is proper in the chosen forum. *Schomann International Corp. v. Northern Wireless, Ltd.*, 35 F.Supp.2d 205, 212 (N.D.N.Y.1999) (citing *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419, 424 (S.D.N.Y.1998), and *PI Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 757 (S.D.N.Y.1995)). In the instant case, it is undisputed that all Defendants do not reside in New York. As such, venue is not proper in this district pursuant to § 1391(a)(1). Defendants also maintain that venue is improper under § 1391(a)(3) as no Defendant is subject to personal jurisdiction in this district. Defendants' Memorandum at 9. However, by maintaining no Defendant is subject to personal jurisdiction in this district, Defendants indicates confusion as to the concept of personal jurisdiction. For venue to be proper within any given federal judicial district pursuant to § 1391(a)(3), requires that the defendant be subject to personal jurisdiction within the *state* in which the judicial district is located, not in the judicial district itself. 28 U.S.C. § 1391(a)(3) and David Siegel, Commentary on 1995 Revision of Subdivision (a), Clause (3). Section 1391(a)(3) is available only, however, only "if there is no district in which the action may otherwise be brought." *Id.* As discussed below, venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) and, therefore, § 1391(a)(3) is not available for purposes of venue. Further, Plaintiff does not dispute Defendants' assertion that venue would be proper in either the Southern District of New York or the Southern District of California. Accordingly, the court need not discuss whether any Defendant is subject to personal juris-

diction in New York in connection with the issue of venue.

Plaintiff maintains that venue is *proper* in this district pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events which give rise to her claims occurred here. Plaintiff's Memorandum at 5. Defendants maintain that *no* events or omissions relative to the Plaintiff's claims occurred in this district. Defendants' Memorandum at 9. According to Defendants, the only factual issues relevant to the instant dispute are whether Defendants breached the contract by failing to deliver merchandise ordered by Plaintiff, whether Rays Apparel, Inc. interfered with Plaintiff's contractual relations based on an alleged sale by Rays Apparel, Inc. to one of Plaintiff's customers, and whether Stark fraudulently advised Plaintiff that he had no intentions of expanding into the "green grass" business. Defendants, Reply at 4. Defendants argue that as such conduct occurred outside New York, venue in this district is improper. *Id.* at 4–5. Defendants also maintain that venue for this action would be proper in either the Southern District of New York where Rays Apparel's sales office is located, or in the Southern District of California where Rays Apparel's principal offices are maintained. Defendants' Memorandum at 9; Stark Affidavit, ¶ 13.

Where, as here, the complaint is based on a contract dispute, courts consider a variety of factors in determining whether venue is proper under § 1391(a)(2), including "(1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred." *Viacom International Inc. v. Kearney*, 1999 WL 92601, *5 (S.D.N.Y. 1999) (citing *P.I. Inc., supra*, at 757–58); *accord, Schomann International Corp., supra*, at 212. The place where the alleged harm occurred is also relevant for purposes of venue. *Rothstein v. Carriere*, 41 F.Supp.2d 381, 387 (E.D.N.Y.1999);

*Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996).

■ Section 1391(a)(2) is generally interpreted as providing that " 'there can be more than one district in which a substantial part of the events giving rise to the claim occurred,' venue can properly exist in more than one district." *Schomann, supra* (quoting 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3804 (Supp.1998)). Accordingly, a plaintiff is not required under § 1391(a)(2) to establish that the chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Neufeld, supra*, at 986 (citing *Leucadia National Corp. v. FPL Group Capital, Inc.*, 1993 WL 464691, *6 (S.D.N.Y.1993)). Thus, that venue for the claims raised in the Complaint may exist in either the Southern District of New York or the Southern District of California is not dispositive on whether venue in this judicial district is also proper.

At issue in *Schomann, supra*, was whether venue was proper in the judicial district where the plaintiff maintained his office although the contract was negotiated and executed through telephone conversations and correspondence between the plaintiff's New York office and the defendant's Iowa office, the defendant never entered the state of New York and the services contracted for were to be performed in a foreign country. *Schomann, supra*, at 213. Although the defendant had argued that venue was proper only in the Northern District of Iowa where Defendant's office was maintained, *id.* at 212, the court held that the contract was negotiated and executed in both New York and Iowa. *Id.* at 213. The contract provided that purchase orders and payment re-

quests thereunder were to be forwarded to Plaintiff's New York office from which payment would be made, called for plaintiff to regularly supervise the defendant's performance under the contract and for the defendant to provide the plaintiff with periodic status reports. *Id.* The defendant also maintained regular communication with the plaintiff throughout the contract's duration. *Id.* Acknowledging that technology has advanced to the point that many contractual arrangements may, today, be made without face-to-face meetings, with the parties instead relying on telephones, facsimile machines and letters, the court held that venue in the Northern District of New York was proper. *Id.* at 213.

Similarly, in *Gregory v. Pocono Grow Fertilizer Corp.*, 35 F.Supp.2d 295 (W.D.N.Y.1999), the court considered whether venue was proper in this district where plaintiff was located although the defendant's contact was limited to telephone conversations, facsimiles and other correspondence between the parties. The court, following the reasoning set forth in *Schomann, supra*, held such dealings were sufficient to render venue in this district proper.

■ The circumstances of the instant case support a finding that venue in this district is proper. Specifically, Purchase Order No. WG11011, issued by Plaintiff, states on its face that bills are to be sent to Anything's Possible in Lewiston, New York.[5] Complaint, Exhibit A; *see* Kirkpatrick Affidavit at 24. Plaintiff sent Defendant three letters dated March 4, March 6, and March 9, 1998, from her Lewiston, New York office. Complaint, ¶¶ 107–109, 122–23, 124; Kirkpatrick Affidavit, ¶ 25. Copies of those letters attached as exhibits to the Complaint indicate they were written by Plaintiff in her Lewiston, New York office. Complaint, Exhibits K, L and M. Additionally, Plaintiff had several busi-

---

**5.** The court takes judicial notice that Lewiston, located in Niagara County, New York, is within the Western District of New York.

ness conversations with Bill Stark regarding Plaintiff's purchase orders placed with Defendants including proposed substitutions and cancellations. Complaint, 110–13, 115–21; Kirkpatrick Affidavit, ¶ 25. Plaintiff also conversed with Lisa Dibsie in a telephone call placed by Plaintiff in Lewiston. Complaint, ¶¶ 131, 133–34; Kirkpatrick Affidavit, ¶ 25. Furthermore, the alleged harm to Plaintiff resulting from Defendant's conduct occurred in this judicial district.

On this basis, the court finds venue exists in the Western District of New York. Accordingly, Defendants' motion to dismiss on this ground should be DENIED.

## 2. *Failure to State a Claim*

On a motion to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert. denied*, 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996); *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir.1995). The court is required to read the complaint with great generosity on a motion to dismiss. *Yoder v. Orthomolecular Nutrition Institute*, 751 F.2d 555 (2d Cir.1985). The complaint may be dismissed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The issue is not whether a plaintiff is likely to prevail ultimately, "but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Weisman v.*

*LeLandais*, 532 F.2d 308, 311 (2d Cir.1976) (quoting *Scheuer*, *supra*, at 236, 94 S.Ct. 1683). However, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied*, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996).

As a preliminary matter, the court notes that Defendants submitted in support of the motion to dismiss the Stark Affidavit, Docket Item No. 5, in which the factual basis on which dismissal of Plaintiff's claims as against Defendants James Stark, Rays & Associates and Rays Group is set forth. Specifically, Stark explains that he ceased doing business under the name "Stark Concepts" before he created Rays Apparel, Inc. Stark Affidavit, ¶ 4. Although Rays & Associates and Rays Group are shareholders of Rays Apparel, Stark maintains that they were not involved in any of the events or occurrences referred to in the Complaint. Stark Affidavit, ¶ 5. Further, Stark maintains that the Complaint contains no allegations against Stark personally, or against Defendants Rays & Associates and Rays Group.

Pursuant to Fed.R.Civ.P. 12(b), if matters outside the pleading are presented to and not excluded by the court, a party's motion to dismiss under Fed.R.Civ.P. 12(b)(6) shall be treated as one for summary judgment and disposed of as provided by Fed.R.Civ.P. 56. A district court is generally required to give notice to the parties before *sua sponte* converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment. *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir.1995). The essential inquiry in determining whether *sua sponte* conversion of a motion to dismiss is proper is whether the non-moving party should reasonably have anticipated that the motion might be converted into one for summary judgment or would be taken by surprise by such conversion and thus de-

prived of a reasonable opportunity to meet the facts outside the pleadings. *Gurary, supra,* at 43 (citing *In re G. & A. Books, Inc.,* 770 F.2d 288, 294–95 (2d Cir.1985), *cert. denied sub nom. M.J.M. Exhibitors, Inc. v. Stern,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *accord Groden, supra,* at 1052–53).

In *Gurary, supra,* the court held that by submitting an affidavit in opposition to a motion to dismiss the plaintiff invited the district judge to rely not only on the pleadings, but also on the "more elaborate explication of plaintiff's grievance contained in his affidavit." *Gurary, supra,* at 43. Accordingly, the plaintiff was unable to claim surprise when the district court, upon consideration of that affidavit, converted the motion to dismiss into one for summary judgment. *Id.*

In *Groden, supra,* the court found that the plaintiff's submission of affidavits, testimony and technical data in opposition to the defendants' motion to dismiss demonstrated that the plaintiff had ample opportunity to present outside evidence. *Groden, supra,* at 1053. Further, the defendant had requested that the motion to dismiss be treated in the alternative as a motion for summary judgment. *Id.* Accordingly, the district court's conversion of the motion to dismiss into one for summary judgment was affirmed. *Id.*

In opposition to the motion to dismiss Plaintiff submitted the Kirkpatrick Affidavit, Docket Item No. 11. However, the statements contained in that affidavit are limited to the venue and personal jurisdiction issues also presented in the motion to dismiss. As such, Plaintiff has not demonstrated ample opportunity to present outside evidence regarding failure to state a claim issue. Nor have Defendants requested alternative treatment of the motion as one for summary judgment. Accordingly, the court declines to convert the motion to dismiss. Nevertheless, the court finds that the claims as to Defendants James Stark, Rays & Associates and Rays Group should be dismissed for failure to state a claim.

The court further notes that Plaintiff makes numerous references in the Complaint to "Defendant" without specifying to which particular Defendant she refers. Further, at the core of this action is a dispute that based on Defendants' alleged failure to deliver merchandise ordered pursuant to three purchase orders and Plaintiff's claim that instead Defendants sold the merchandise to The Paradise Shops, formerly Wee Golf's largest client. The court thus considers whether the Complaint sufficiently states a claim against Defendant Stark, Rays & Associates or Rays Group arising from the facts alleged.

The Complaint asserts that Stark does business as Stark Concepts, Complaint, ¶ 43, which is a member of the unincorporated association The Rays Group. Complaint, ¶ 45. However, the Complaint is devoid of any facts that any of the unlawful actions allegedly taken by Stark were done on behalf of or in furtherance of Stark Concepts. Also, Stark is specifically referred to as the president of The Rays Group in Counts Four and Five, which allege, respectively, unjust enrichment and fraud. *Id.,* ¶¶ 187, 197. Stark is not, however, sued in his capacity as president of The Rays Group. The court finds the Complaint insufficient to support a claim that Stark, doing business as Stark Concepts, either failed to deliver the merchandise ordered in Purchase Orders Nos. WG11011, WG8190 or WG8197 and, as such, Defendants' motion to dismiss the Complaint as to Stark should be GRANTED. *DeJesus, supra.*

The Complaint names Rays & Associates as a defendant solely based on its alleged corporate status as Rays Apparel's foreign parent. Complaint, ¶ 48. There is, however, no allegation that Rays & Associates acted independently to further the alleged unlawful activity on which the Complaint is based.

Although the corporate relation between a parent and its subsidiary may be sufficiently close to justify piercing the corporate veil and holding the parent corporation legally accountable for the actions of its subsidiary, generally such relationship alone is insufficient to bind the parent for the actions of the subsidiary. *DeJesus, supra,* at 69 (*citing Thomson–CSF, S.A. v. American Arbitration Ass'n.,* 64 F.3d 773, 777 (2d Cir.1995)). Rather, the "presumption of separateness" afforded to related corporations must generally be overcome before the corporate veil may be pierced. *DeJesus, supra,* at 70. To overcome such presumption, the plaintiff must provide facts demonstrating the parent corporation's actual domination, rather than the opportunity to exercise control of, the subsidiary corporation. *Id.* at 69. Here, there is no allegation of overlapping officers or managers, bank accounts or facilities. Nor is it ever claimed that Rays & Associates owns all of the stock of Rays Apparel. *Compare Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995) (noting that court which have addressed the question of parent-subsidiary liability have adopted a flexible four-part test to determine the degree of interrelationship between the two entities, including evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control).

In the instant case, the Complaint fails to assert any facts which, if true, would demonstrate that Rays & Associates dominated Rays Apparel's business or was in any way involved with the decision by which Plaintiff allegedly was injured. Accordingly, Rays & Associates may not be a defendant on the basis of its status as a parent of Rays Apparel, Inc. and Defendants' motion to dismiss the Complaint as to Rays & Associates should be GRANTED.

 The Complaint also names Rays Group as a defendant on the basis that it manufactures apparel which it then supplies to Rays Apparel. Complaint, ¶ 50. Rays Group is allegedly affiliated with Defendants The Rays Group and Rays Apparel, Inc. as it supplied product to Rays Apparel, Inc. Complaint, ¶ 49. As with Stark, however, the Complaint alleges no facts which, if true, would establish that Rays Group was in any way involved in the conduct by which Plaintiff maintains she was injured, specifically, the failure to deliver merchandise ordered through the disputed purchase orders or the resale of such goods to The Paradise Shops. Rather, the gravamen of the Complaint is that Rays Apparel, Inc. failed to deliver the clothing ordered by Plaintiff in accordance with the purchase orders. As such, the motion to dismiss for failure to state a claim as to Defendant Rays Group should be GRANTED.

### 3. *Personal Jurisdiction*

Alternatively, should the district judge find that the complaint does state a claim as against Defendants Rays & Associates and Rays Group, the court considers whether the action should be dismissed as against them for lack of personal jurisdiction.

According to Defendants, Rays & Associates, Ltd. and Rays Group are both foreign corporations and, although each owns shares of Rays Apparel, neither Rays & Associates nor Rays Group has now or ever had any relationship with Plaintiff or anything to do with the events and occurrences upon which the allegations contained in the Complaint are based. Defendants' Memorandum at 13; Stark Affidavit, ¶ 18. Further, neither Rays & Associates or Rays Group maintains an office in nor have representatives or any other contacts of any nature with New York. Defendants' Memorandum at 13; Stark Affidavit at 19. Defendants thus urge the court to find that Plaintiff can obtain neither personal or long-arm jurisdiction over those entities. Defendants' Memorandum at 13. In opposition, Plaintiff maintains that jurisdiction over

Defendants Rays & Associates and Rays Group is proper under either New York Civil Practice Law and Rules § 301 as those defendants, through Rays Apparel, Inc. and James Stark, do business in New York, and also under § 302 as those defendants have, through their agents, transacted business in New York upon which Plaintiff's claims arise. Plaintiff's Memorandum at 8.

Prior to discovery, a plaintiff my defeat a motion challenging jurisdiction by making a "prima facie showing" of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); Fed.R.Civ.P. 12(b)(2). In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing on the merits. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

■ If the court decides to determine the motion prior to discovery, a plaintiff may defeat a motion to dismiss by making a prima facie showing of jurisdiction either through "legally sufficient allegations of jurisdiction" in the pleadings, *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), or through its own affidavits and supporting materials. *Marine Midland, supra.* Such a prima facie showing does not, however, preclude the eventual need for the plaintiff to establish the existence of personal jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. *Id.* Nevertheless, until an evidentiary hearing is held, a prima facie showing of personal jurisdiction is sufficient to withstand a motion to dismiss. *Id.* This principle "remains true notwithstanding a controverting presentation by the moving party." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Where doubts exist, they should be resolved in the plaintiff's favor. *Marine Midland Bank, N.A., supra*, at 904.

■ Personal jurisdiction over a defendant in a diversity case such as the instant action is determined by reference to the law of the state in which the court sits. *Hoffritz Cutlery, supra*, at 57; *Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 889 (W.D.N.Y.1992) (citing cases). The relevant New York law consists of Sections 301 and 302 of New York's Civil Practice Law and Rules ("N.Y.CPLR"), *see* N.Y. Civ.Prac. L. & R. § 301 *et seq.* (McKinney 1990), as interpreted and applied by New York's courts. Further, no discovery relative to the issue of personal jurisdiction has been conducted and, as such, at this point Plaintiff need make only a prima facie showing that personal jurisdiction exists.

### A. N.Y. CPLR § 301

■ Section 301 permits a New York court to exercise personal jurisdiction over a foreign corporation that is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in [the state]." *Landoil Resources v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990) (quoting *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895, 896–97 (1972) (applying New York Civ. Prac. L. & R. § 301)), even if the cause of action is unrelated to the defendant's New York activities. *Jazini v. Nissan Motor Company, Ltd.*, 148 F.3d 181, 184 (2d Cir.1998) (citing *Taca Int'l Airlines, S.A. v. Rolls–Royce of England, Ltd.*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329, 331 (1965)).

■ Where, as here, the claim is that the foreign corporation is present in New York based on activities there of its subsidiary, the presence of the subsidiary in New York will not, by itself, establish the parent's jurisdiction in that state. *Jazini,*

*supra*, at 184 (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984)). For a New York court to have § 301 jurisdiction under those circumstances, the subsidiary must be either an "agent" or a "mere department" of the foreign parent. *Jazini, supra*, at 184 (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).

▬▬▬ That a subsidiary is an agent of the parent may be established by showing that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, 854, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). With regard to Defendant Rays & Associates, Plaintiff relies on the bald assertion that Rays & Associates is the foreign parent corporation of Rays Apparel, Inc., Complaint, ¶ 47. However, Plaintiff alleges no facts supporting this allegation and, as such, Plaintiff's conclusory statement is insufficient to make a prima facie showing of agency between Rays & Associates, Ltd. and Rays Apparel, Inc., sufficient for personal jurisdiction over Rays & Associates, Ltd. under § 301. *Jazini, supra*, at 184.

With regard to Rays Group, Plaintiff asserts that this Defendant is affiliated with and manufactures apparel for Rays Apparel, Inc. Complaint, ¶¶ 49–50. Plaintiff also relies on material submitted in opposition to the motion to dismiss including a certificate of incorporation for Rays Apparel, Inc., filed in California, and a promotional brochure for Rays Group ("the brochure").[6] According to Plaintiff, the statement in the brochure that "Rays Group has established its own sales agency in the United States" refers to Rays Apparel, Inc. as Rays Group's "distribution agent in the United States." Kirkpatrick Affidavit, ¶ 50 (citing Brochure at 5, 7); Plaintiff's Memorandum at 12. As James

Stark avers that the brochure was not prepared by him and in the absence of any indication its content is attributable to Rays Apparel, Inc., its evidentiary weight should be discounted. Nevertheless, assuming, *arguendo*, such statements in the brochure are correct, and although there is no dispute that Rays Apparel, Inc.'s sales force is headquartered in New York's garment district, such fact does not require a finding that Rays Apparel, Inc. markets, in New York, apparel manufactured by Rays Group through that office. Further, that James Stark resides in California and works out of an office of Rays Apparel, Inc. in Los Angeles, yet remained involved, as Plaintiff alleged, with Plaintiff's orders and that the brochure by its terms refers to Rays Apparel, Inc. as present in California only, Brochure at 3, 5, 12 and photo at 4, reinforces the determination that, upon this record, Rays Group is not present in New York for jurisdictional purposes.

Plaintiff further maintains that a statement in the brochure that in 1986 Rays Group "purchased an American agency, and it has set up its own office in Los Angeles, under the business management of James Stark, to actively open up the U.S. market," refers to Rays Apparel, Inc. Kirkpatrick Affidavit, ¶¶ 49–50; Plaintiff's Memorandum at 13. According to Rays Apparel, Inc.'s certificate of incorporation filed with the California secretary of state, however, its date of incorporation is March 10, 1993. As such, Plaintiff's assertion that Rays Apparel, Inc. is the American agency referred to in the brochure as the Los Angeles office established by Stark in 1986, Brochure at 5, is incorrect.

▬▬▬ In determining whether personal jurisdiction exists under § 301 on the basis that the subsidiary is a "mere department" of the parent, the court must consider four factors including (1) common ownership which is "essential," (2) the par-

---

6. Copies of Rays Apparel, Inc.'s certificate of incorporation and the Rays Group brochure are respectively attached as Exhibit C and E to the Kirkpatrick affidavit.

ent's financial dependency on the subsidiary, (3) the degree to which the parent is involved in the selection and assignment of the subsidiary's executive personnel and failure to observe corporate formalities, and (4) the amount of control exercised by the parent over the subsidiary's marketing and operational policies. *Jazini, supra,* at 184 (citing *Beech Aircraft, supra,* at 120, 121, 122). Here, Plaintiff makes no allegations with regard to these four factors as to Defendant Rays & Associates or Rays Group other than the single bald allegation that Rays & Associates is the "foreign parent corporation of Rays Apparel [Inc.]." Complaint, ¶ 47. However, in considering whether personal jurisdiction exists, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Jazini, supra,* at 185 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Nor does anything in the brochure, on which Plaintiff relies only with regard to Rays Group, demonstrate the presence of any of the four factors necessary to make a prima facie showing that Rays Apparel, Inc. is a mere department of Rays Group. First, nothing in the brochure demonstrates common ownership of Rays Group and Rays Apparel, Inc. The brochure indicates that in 1993 James Stark "formed another company with Rays, which has become an organization under the umbrella of the Rays Group, with James [Stark] managing its headquarters in Los Angeles, charges with the *exclusive* responsibility for handling sales of the Rays series of products in the American market." Brochure at 3 (emphasis added). Although that statement, along with the certificate of incorporation indicating that Rays Apparel, Inc. was incorporated in California in 1993 supports Plaintiff's contention that the statement "Rays Group has established its own sales agency in the United States" refers to "Rays Apparel, Inc.," *See* Kirkpatrick Affidavit, ¶ 49, Plaintiff's Memorandum at 12–13, it does not establish common ownership of Rays Group and Rays Apparel, Inc., an essential element to

finding that Rays Apparel, Inc. is but a "mere department" of Rays Group. *Jazini, supra,* at 185. Moreover, Plaintiff has not argued that Rays Group is the parent of Rays Apparel, Inc., asserting instead that Rays & Associates is the parent of Rays Apparel, Inc. Complaint, ¶ 47.

Nor does the brochure indicate that Rays Apparel, Inc. is financially dependent on Rays Group as required for the second factor. Although the brochure indicates that among the garments manufactured by Rays Group are baby garments into which the Uh!Oh label is sewn, and although the merchandise ordered by Plaintiff was from the Uh!Oh line, there is no indication in the brochure that Rays Group is the exclusive manufacturer of such garments. In fact, Stark states in further support of the motion to dismiss for lack of personal jurisdiction that although Rays Group manufactures some apparel at a number of production facilities in the Far East, from which Rays Apparel orders much of its solid pants and shorts, the majority of Rays Apparel, Inc.'s apparel is produced from unrelated companies in a variety of countries where merchandise including solid pants and shorts, pattern yarn shorts, sweaters, polo shirts, knitwear and tee shirts such as those ordered by Plaintiff. Stark Reply Affidavit, ¶ 7. Stark's statement thus indicates that there were other sources for the Uh!Oh garments sold in the United States, including those Plaintiff ordered, other than Rays Group such that Rays Apparel, Inc.'s financial viability is not dependent on Rays Group.

As to the third factor, nothing in the brochure indicates that even if Rays Group were shown to be the parent corporation of Rays Apparel, Inc., that Rays Group is involved with the selection or assignment of Rays Apparel, Inc.'s executive personnel and fails to observe corporate formalities between the two entities. Finally, with regard to the fourth factor, the Brochure is devoid of anything tending to demonstrate that Rays Group exercises any de-

gree of control over Rays Apparel, Inc.'s marketing and operational policies.

Although the court recognizes it may be difficult to make a prima facie showing of personal jurisdiction over a foreign corporation without discovery, such "is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States." *Jazini, supra,* at 186. As stated, Plaintiff has neither argued nor established that Rays Apparel, Inc. is wholly owned by Rays Group.

Defendants' motion to dismiss the complaint as against Defendants Rays & Associates and Rays Group for lack of personal jurisdiction under § 301 is, therefore, GRANTED.

### B. *N.Y. CPLR § 302*

A defendant may not be "doing business" in New York within the meaning of § 301, but may nevertheless be subject to jurisdiction in New York based on a lesser showing of contacts with this state, provided the cause of action arose from such contacts. N.Y.Civ.Prac. L. & R. § 302; *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983); *Daniel v. American Bd. of Emergency Medicine,* 988 F.Supp. 127, 229 (W.D.N.Y.1997). Pursuant to § 302(a)(1), a court may exercise personal jurisdiction over any nondomiciliary who, either in person or through an agent, "transacts business within the state or contracts anywhere to supply goods or services in the state." N.Y. Civ. Prac. L. & R. § 302(a)(1) (McKinney 1990). In other words, "[i]f the defendant has 'transacted business' in New York, it is suable on any cause of action that arises out of the transaction." *Hoffritz, supra,* at 58; See N.Y. Civ.Prac. L. & R. § 302(a)(1).

A demonstration that a defendant "transacted business" in New York so as to be suable in New York under § 302 provided that a cause of action arises from

that transaction requires considerably less contact with New York than a demonstration for purposes of finding jurisdiction under § 301 based on "doing business" in New York which renders the defendant suable on unrelated causes of action. *Beacon Enterprises, Inc., supra,* at 763. Specifically § 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Daniel, supra,* 229 (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988), and citing *Beacon, supra,* at 764) (bracketed text in original).

The court's determination as to whether a defendant has transacted business in New York for purposes of § 302(a)(1) requires examination of the totality of defendant's activities within New York. *Eck v. United Arab Airlines, Inc.,* 360 F.2d 804, 810–11 (2d Cir.1966): *Falik v. Smith,* 884 F.Supp. 862, 866–67 (S.D.N.Y.1995) (citing *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.,* 782 F.Supp. 763, 769 (W.D.N.Y.1991)). "If, under the totality of the circumstances, a defendant purposefully availed itself of the privilege of conducting business in New York, thereby invoking the benefits and protections of its laws, the defendant 'transacts business.'" *Daniel, supra,* at 229 (citing *Broadcasting Rights International Corp. v. Societe du Tour de France, S.A.R.L.,* 675 F.Supp. 1439, 1443 (S.D.N.Y.1987)).

Although Plaintiff maintains that the court may also exercise personal jurisdiction over defendants Rays & Associates and Rays Group pursuant to § 302, Plaintiff's Memorandum at 8, her support for such is limited to that sole, conclusory statement. Nevertheless, as the court considers this issue only in the event that the district judge finds the complaint states a claim as to either Defendants

Rays & Associates or Rays Group, such finding would necessarily be predicated on a determination that the Complaint sufficiently alleges involvement by Rays & Associates or Rays Group in the actions which give rise to this suit under an agency or *respondeat superior* theory. In that case, Plaintiff would have made a prima facie showing that Rays & Associates or Rays Group participated either in person, or through an agent, in at least one transaction upon which the current dispute can be said to arise and, thus, made a prima facie showing that this court has personal jurisdiction over those Defendants. In such event, Defendants' motion to dismiss for lack of personal jurisdiction pursuant to § 302 as to Defendants Rays & Associates and Rays Group should be denied.

### CONCLUSION

Based on the foregoing, Defendants' motion to dismiss (Docket Item No. 5) should be GRANTED in part and DENIED in part.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.